UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GABLE SERVICES, LLC,   )
    a Michigan Limited Liability   )
Company,   )
                             )   Case No.
    Plaintiff,   )
                             )
v.   )   Judge
                             )   Magistrate Judge
JULI ANN ELKINS, an individual,   )
STAFF HEADS, LLC, a Michigan   )
Limited Liability Company,   )
DOMINICK KING, an individual,   )
DUNCAN NICHOLS, an individual, and )
JOSHUA ROMAN, an individual,   )
                             )
    Defendants.

---

## **VERIFIED COMPLAINT**

Plaintiff, Gable Services, LLC ("Plaintiff" or "GABLETEK"), states for its

Verified Complaint against Defendants, Juli Ann Elkins ("Elkins"), Staff Heads,

LLC ("Staff Heads"), Dominick King ("King"), Duncan Nichols ("Nichols") and

Joshua Roman ("Roman") (collectively, "Defendants"), as follows:

## **Nature Of The Case**

1.    This is a trade secrets and unfair competition case involving a massive

heist of sensitive and competitive documents, data and information in the industrial

robotics industry, and breaches of trust and of contracts, and tortious interference –

and the setting up of a competitive company (even while still employed), for the purpose of gaining an unfair advantage and an unlawful and improper head start, to compete directly against (and to harm) the individual Defendants' now former employer, GABLETEK.

2.      GABLETEK is a leading provider of robotics and control solutions for factory/industrial and other automation.  GABLETEK trains and equips its robot programmers in areas including laser welding, material handling, mig welding, plasma and laser cutting, resistance welding, sealing and adhesive dispensing, and stud welding.  GABLETEK programmers are specifically trained to know and understand GABLETEK's customers' required program standards, and are GRS, FANUC Dual Check Safety, and/or ABB SafeMove certified.  GABLETEK also trains its programmers to troubleshoot robot cabinets as well as software and hardware peripherals.

3.      GABLETEK also offers robot maintenance services, including robot oil change, brake inspections, calibration, mastering, testing and replacing batteries, replacing harnesses and cables, and related tasks.

4.      GABLETEK's control system solutions services include: design services, PLC / HMI programming, schematics: electrical, pneumatic & hydraulic, panel design and build, PLC software development, HMI development, motion control systems, factory information systems (FIS), industrial network, risk

assessment, RFID consulting, and reconditioning and retrofitting services.[1]

5.      In this high-tech environment, GABLETEK has numerous levels of confidential and proprietary, and trade secret information, and its programmers and managers have access to same while employed.

6.      GABLETEK hired Elkins, who now lives in Rochester Hills, Michigan (and formerly lived in Sterling Heights), in or around April 2010, and Elkins served as the company's Office Administrator and/or Operations Manager, including oversight responsibilities over operational, vendor, customer, human resources, payroll and benefits functions, all with access to confidential, sensitive and competitive product, vendor, customer, sales, engineering, and prospect information. *See* Exhibit A (Elkins LinkedIn profile).

7.      Elkins resigned from GABLETEK on February 10, 2023 (after nearly 13 years of work), via email to company owners at 7:41 am on a Friday, without advance notice and effective immediately.

8.      A recent analysis of Elkins's company laptop has revealed that months before she resigned, a Seagate brand USB device known as an expansion desktop was inserted into the laptop in July 2022 and the drive contained notable files, including, but not limited to,:    "How to safely [*sic*] delete files" and

---

[1] *See generally*, https://gabletek.com/robotics/; https://gabletek.com/controls/ (last visited June 15, 2023).

"Juli\backup.pst" (over 46 MB) – denoting an entire container of emails.[2]  This device was connected to the laptop on multiple occasions during the first half of July 2022 and also on August 31, 2022.

9.     Another USB storage device was connected to Elkins's laptop and contained GABLETEK files, including "payroll-gabletek-backup.pst." This device was connected to the laptop multiple times during January 2023.

10.     Yet another USB storage device (a SanDisk 3.2 drive[3]) was connected on November 28, 2022, January 18, 2023 and February 3, 2023, and contained entire folders labeled for at least two key GABLETEK customers (labeled simply by the names of the customers, herein referred to as "Customer #1" and "Customer #2" to protect confidentiality) and personnel and other folders for "Roman," "Nichols," "Petkkus [*sic*]," "Mojica," "King," and a file on "Unemploy[ment:] How To Info[rm]_Employees.pdf." (from January 19, 2023), and "Employee Burden Rates_092920_Per Patrick.xlsx" (from January 16, 2023) and folders of resumes (from January 16, 2023), and folders named "Set Up," "IRS Docs_ Corporation," and "Certificate of Good Standing" (from December 21, 2022).  Other files on this

---

[2] These Seagate brand devices are typically 2TB to 4TB drives.  *See*, *e.g.*, https://www.seagate.com/support/external-hard-drives/desktop-hard-drives/expansion-desktop/ (last visited June 15, 2023).

[3] Various SanDisk products provide significant USB-based storage.  *See*, *e.g.*, https://www.westerndigital.com/products/usb-flash-drives/sandisk-extreme-pro-usb-3-2#SDCZ880-128G-G46 (last visited June 15, 2023).

device included:

| | |
|---|---|
| D:\\Resumes\Gable Resumes | 1/16/23 12:59 PM |
| D:\Resumes\resume.docx | 1/16/23 9:51 AM |
| D:\Resumes\resume.docx | 1/16/23 9:51 AM |
| D:\Resumes\resume.pdf | 1/16/23 9:50 AM |
| D:\Files | 12/12/22 11:25 AM |
| D:\Files\TRAINING_HR_ONBOARDING | 12/12/22 11:25 AM |
| D:\Files\TRAINING CERTIFICATES_CUSTOMERS | 12/12/22 11:24 AM |
| D:\Files\TRAINING_OTHER | 12/12/22 11:24 AM |
| D:\Files\ORIENTATION | 12/12/22 11:23 AM |
| D:\Files\GREEN LOCK REPLACEMENT | 12/12/22 11:21 AM |
| D:\Files\RECRUITING | 12/12/22 11:21 AM |
| D:\Files\DISCIPLINARY | 12/12/22 11:21 AM |
| D:\Files\How To Onboard Guides for Employees | 12/12/22 11:20 AM |
| D:\Files\Employment Forms | 12/12/22 11:20 AM |
| D:\Files\W9 Forms | 12/12/22 11:20 AM |
| D:\Files\TRAINING DESCRIPTIONS_CONTROLS | 12/12/22 11:20 AM |
| D:\Files\CONTRACT HOUSES | 12/12/22 11:19 AM |
| D:\Files\UNEMPLOYMENT | 12/12/22 11:19 AM |
| D:\Files\TIME_EXPENSES | 12/12/22 11:19 AM |
| D:\Files\CUSTOMER REQ'D | 12/12/22 11:18 AM |
| D:\Files\JOB DESCRIPTIONS | 12/12/22 11:17 AM |

| | |
|---|---|
| D:\\Employee List.pptx | 12/12/22 11:14 AM |
| D:\Employee List.pptx | 12/12/22 11:14 AM |
| D:\Emails | 12/12/22 10:40 AM |
| D:\RCO | 11/28/22 10:30 AM |
| D:\RCO\Proposal_112822.docx | 11/28/22 10:30 AM |
| D:\RCO\Franklin_Resume_2022.pdf | 11/28/22 10:29 AM |
| D:\RCO\Lee_Resume_2022.pdf | 11/28/22 10:29 AM |

11.     Yet another USB device connected in September and November 2022 contained over 90 contractor, training, orientation, employee and resume folders and/or files.

12.     Between June 20, 2022 and February 14, 2023, at least twelve (12) different USB drives and/or devices were connected to this GABLETEK laptop assigned to Elkins, and at least four of these were connected multiple times (spanning September 2022 to February 2023).

13.     Elkins never returned any of these documents to GABLETEK, whether upon her departure or since then.

14.     Not only this, Elkins formed a competing company, Staff Heads, filing initiating papers via counsel in Michigan to organize the LLC on September 28, 2022 (all without letting GABLETEK know, and without any ability to detect same, with the registered agent being their counsel and their street address being a UPS Store –

34841 Mound Rd). *See* Exhibit B (Staff Heads, LLC, Articles of Organization).[4]
Her conduct in this regard violated not only GABLETEK policies (some of the very
policies she helped draft, design, approve and implement, including policies in the
Employee Handbook, which applied to her), but also violated applicable law,
including, but not limited to, her duty of loyalty owed to GABLETEK.

15.     A few months later Elkins, as CEO of Staff Heads, filed papers to
change the registered office of the company to her then home with her husband:
40349 Remsen Drive, Sterling Heights, Michigan 48313. She signed the document
on January 24, 2023 as CEO of Staff Heads, and it was filed on January 27, 2023.
*See* Exhibit C (Staff Heads, LLC, Certificate of Change of Registered Office). But
she kept her counsel as Registered Agent, even though he was not to be found at that
location. *See id.*

16.     GABLETEK hand delivered a letter dated March 17, 2023 to Elkins at
her then home in Sterling Heights, delivered to her personally on March 19, 2023.
*See* Exhibit D (March 17 letter).

17.     Having first discovered the existence of Staff Heads in late April 2023,
GABLETEK sent a letter to Staff Heads on Friday, April 28, 2023, but no response
was received. *See* Exhibit E (letter to counsel w/ attachment).

---

[4] *See* https://locations.theupsstore.com/mi/sterling-heights/34841-mound-rd (last
visited June 15, 2023).

18.    But rather than responding, the next business day, Monday, May 1, 2023 Elkins changed the official street address of the location of the registered office of Staff Heads to: 1227 Beale Circle, Rochester Hills, Michigan 48307 (where she now lives), from her (former) home with her husband on Remsen in Sterling Heights.[5]  *See* Exhibit F (Staff Heads, LLC, Certificate of Change of Registered Office).  But she kept the resident agent and mailing address with counsel in Mt. Clemens.  Elkins signed this Certificate as "Authorized Agent" for Staff Heads.

19.    Elkins's February 10 resignation was not a solo event.  Indeed, in succession after her, five robot programmers resigned within a few weeks, including Dominick King on February 11, 2023 (a Saturday); Duncan Nichols on February 13, 2023; Michael Imrick on February 18, 2023; and Joshua Roman and Joshua Raona on February 28, 2023.

20.    This would have been potentially an innocuous coincidence, but at least King, (and upon information and belief, Nichols and Roman) began working with Elkins and Staff Heads, serving customers they had been serving with GALBLETEK.

21.    Namely, GABLETEK has recently discovered King is a Senior Robotics Engineer at Staff Heads and as of at least May 2023 has been working on site at a well-known auto assembly factory, through "Customer #2" (a customer of

---

[5] On May 3, 2023, Elkins filed for divorce from her husband, in Macomb County.

8

GABLETEK); and Nichols and Roman have been working at a location of "Customer #2" in Auburn Hills (a customer of GABLETEK).

22. No USBs or documents of any sort were returned by Elkins upon her separation from employment in February 2023, nor did she return anything in response to the March 17 letter, and she had no business reason to copy or retain these files, either while employed or after.

23. Additional, unknown files are expected to be contained on the numerous USB drives of Elkins and on or within other devices or accounts that have been in the possession, custody or control of Elkins and/or Staff Heads, and expedited discovery will help show more fully the scope, timing and extent of the data exfiltration.

24. King, Nichols and Roman all signed agreements with GABLETEK, each committing to a two-year non-compete, two-year non-solicitation (including as to customers and employees), and committing to confidentiality permanently (with no expiration date) of GABLETEK information, all as set forth in the agreements.

25. King, Nichols and Roman have violated all of these covenants, and Elkins and Staff Heads induced them to do so. In a massive data heist, Elkins took with her customer histories, employee histories, strategy-related and other competitive data, and countless company emails, and King, Nichols and Roman (upon information and belief) showed up as Robotics Engineers or Senior Robotics

Engineers at Staff Heads (competing directly against GABLETEK) and have begun, together with Elkins and Staff Heads, actively soliciting and serving customers they served at GABLETEK, in violation of their agreements and applicable law.

26.     GABLETEK recently sent cease-and-desist letters to Elkins, King, Nichols and Roman, each of which have gone without response and each of which have been unheeded.  Staff Heads and Elkins have, upon information and belief, instead doubled-down alongside King, Nichols and Roman, to continue actively to assist King, Nichols and Roman in their improper conduct.

27.     Indeed, Elkins was very recently discovered on the floor of another customer of GABLETEK ("Customer #1"), talking with GABLETEK employees and soliciting them to work with her at Staff Heads, and another GABLETEK employee who had been placed at that facility recently resigned his employment with GABLETEK.

28.     GABLETEK brings this action under the Defend Trade Secrets Act, and applicable state law, including the Michigan Uniform Trade Secrets Act; breach of duty of loyalty by Elkins; breach of contract by King, Nichols and Roman; tortious interference with contract by Elkins and Staff Heads, tortious interference with business relationships and expectancies by Elkins, Staff Heads, King, Nichols and Roman; and conversion, civil conspiracy and aiding and abetting.  GABLETEK seeks immediate, preliminary and permanent injunctive relief that includes a return

of all property and files taken by Defendants; and GABLETEK seeks damages, including, but not limited to, exemplary and punitive damages, compensation for all losses of any sort incurred and that have been and will be incurred by Defendants' conduct, and GABLETEK's attorney fees, expenses and costs in having to investigate, pursue and remedy Defendants' conduct and in conducting this litigation.

## Parties

29.     Plaintiff GABLETEK is a Michigan limited liability company, with its main office for business in Oakland County, Michigan, at 667 E. Elmwood Avenue, Troy, Michigan 48083.  GABLETEK conducts business in the Eastern District of Michigan.

30.     Elkins is a resident of Macomb or Oakland County, Michigan, domiciled at 40349 Remsen Drive, Sterling Heights, Michigan 48313 or 1227 Beale Circle, Rochester Hills, Michigan 48307 (having apparently recently moved out of the Sterling Heights home and pursuing divorce from her husband).  Elkins conducted work duties at all relevant times, within this judicial district, and the acts or omissions of Elkins occurred or had their effects, in whole or in part, in this judicial district.

31.     Staff Heads, LLC is a Michigan limited liability company, with its main office for business in Oakland County, Michigan, at 1227 Beale Circle, Rochester

Hills, Michigan 48307.  Staff Heads conducts business in the Eastern District of Michigan.

32.    King is a resident of Wayne county, residing at 6090 Marvin Street, Taylor, Michigan 48180.  King conducted work duties at all relevant times, within this judicial district, and the acts or omissions of Kings occurred or had their effects, in whole or in part, in this judicial district.

33.    Nichols is a resident of Macomb county, residing at 41056 Rose Lane, Clinton Township, Michigan 48036.  Nichols conducted work duties at all relevant times, within this judicial district, and the acts or omissions of Nichols occurred or had their effects, in whole or in part, in this judicial district

34.    Roman is a resident of Oakland county, residing at 922 Columbia Road, Berkley, Michigan 48072.  Roman conducted work duties at all relevant times, within this judicial district (and at least one other, including in greater Kansas City), and the acts or omissions of Roman occurred or had their effects, in whole or in part, in this judicial district.

## Jurisdiction and Venue

35.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and applicable law, as this is a civil action arising under the laws of the United States for injunctive relief and damages as a result of Defendants' violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1836, *et seq*.

36.    This Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(a) and applicable law, because the state law claims are so related to the federal claims that they form part of the same case or controversy.

37.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2), in that King, Nichols and Roman consented to venue in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district, and/or a substantial part of the property that is the subject of this action is situated in this judicial district.

## Background Facts

### GABLETEK Has Taken And Takes Significant Measures To Protect Its Confidential, Proprietary and Trade Secret Information

38.    GABLETEK has spent years investing greatly in the development of its business, and takes significant measures to protect the confidentiality of its information.

39.    GABLETEK's confidential information includes, but is not limited to, financial information, marketing information, customer technical specifications, customer sales information, customer prospect targets, customer marketing assessments, sales plans, training materials and programs, studies, programming materials, control systems materials, product and equipment data sheets, strategic plans, internal organizational data, monetary and industry targets, contracts and

13

contractual terms, pricing and sales information and data, and employee and compensation data.

40. GABLETEK also promises its customers to maintain confidentiality of their business information.

41. Among its numerous policies in the area of confidentiality, GABLETEK has a cybersecurity policy covering risk-based security along numerous platforms run by IT professionals.

42. GABLETEK limits access to customer/client data and other sensitive and proprietary material. GABLETEK maintains security controls in areas of authentication, gateways, network restrictions, and firewall protection, as it relates to protecting its information.

43. At all relevant times, GABLETEK also operated and managed all necessary infrastructure to support its internal-facing systems, and continues to do so.

44. At all relevant times, GABLETEK consistently monitored and sought to improve security, reliability, availability, and integrity of GABLETEK systems, and continues to do so.

45. At all relevant times, GABLETEK's deployed technologies have included targeted threat protection, attachment protection, impersonation protection, data encryption, single sign-on, two-factor authentication, next-generation firewalls,

advanced endpoint protection, and geo-redundant infrastructure; and this remains the case.

46.     At all relevant times, GABLETEK has had one or more policies in place to enforce best-practices and technical controls in areas of authentication, access control, gateways, network restrictions, and cryptography as it relates to protecting GABLETEK's information.

47.     At all relevant times, GABLETEK also takes reasonable efforts to prevent transfer of data to unsanctioned cloud-based file storage services, such as DropBox, Google Drive, or Box, and continues to do so.

48.     Additionally, GABLETEK controls the ability to print remotely and monitors all printing activity from its systems.

49.     At all relevant times, employees and independent contractors also underwent regular phishing simulations, and this remains the case.

50.     At all relevant times, GABLETEK monitors network activity globally and alerts GABLETEK of any perceived threats, internal or external, and this remains the case.

51.     At all relevant times, GABLETEK also underwent regular vulnerability scans and penetration tests as well as internal vulnerability scans, and this remains the case.

52.     At all relevant times, GABLETEK regularly conducted risk

assessments to identify areas of exposure and identify solutions to mitigate, and this remains the case.

***GABLETEK Hires Elkins, King, Nichols and Roman.***

53.    Elkins began at-will employment with GABLETEK on or about April 2010, and she served as its Office Administrator and/or Operations Manager.

54.    In connection with her hire and onboarding, Elkins is believed to have executed one or more agreements that she, upon information and belief, has in her possession but has caused to be deleted from the files of GABLETEK.

55.    King began at-will employment with GABLETEK as a robot programmer on or about January 19, 2021.

56.    Nichols began at-will employment with GABLETEK as a robot programmer on or about December 7, 2020.

57.    Roman began at-will employment with GABLETEK as a robot programmer on or about August 8, 2016.

58.    In connection with their hire and onboarding, King, Nichols and Roman each executed a Non-Competition, Non-Solicitation, Confidentiality and Work Product Agreement.  *See* Exhibits G (King); H (Nichols); and I (Roman).

59.    In their Agreements, King, Nichols and Roman agreed, among other things:

> GABLETEK and its subsidiaries, divisions, affiliates and related companies (hereinafter collectively referred to as "GABLETEK") are in the business of

providing turn-key system integration; robotic programming; controls engineering and design; design services; PLC/HMI programming; control reliable system design; electrical, pneumatic and hydraulic schematics; panel design and build; PLC software development; HMI development; motion control; Factory Information Systems ("FIS"); industrial networks, risk assessment; RFID; consulting; reconditioning and retrofitting services; staffing support; vision systems utilization; and programmer training (the "Restricted Business"). GABLETEK has carried on, and continues to carry on, the Restricted Business worldwide.

*See* Exhibits G, H and I, at ¶ 1.

60.    King, Nichols and Roman also agreed:

For the purposes of this Agreement, Confidential Information includes, without limitation, information, knowledge, contacts and experience relating to the businesses, operations, properties, assets, liabilities and financial condition of GABLETEK and the markets and industries in which it operates, including, without limitation, information relating to its respective business plans and ideas, projections, the specifications of any new products or services under development by GABLETEK, information related to products under or development testing by GABLETEK or which GABLETEK at any time is seeking to license or acquire for development and testing, computer programs and software, source codes or similar information of GABLETEK product information, product profit margins, wholesale and distributer prices, trade secrets, passwords, intellectual property, surveys, know-how, formulas, processes, research and development, methods, designs, product specifications, plans, techniques utilized in designing, developing, manufacturing, testing or marketing its products or in performing services for Customers and accounts of GABLETEK, strategies, policies, pricing procedures and financing methods, wholesalers, distributers, vendors, suppliers, Customers or potential Customers, the special requirements of particular Customers, and the current and anticipated requirements of Customers generally for the products or services of GABLETEK, sources and leads for obtaining new business, materials, results of operations, statistical information, and personnel data and personal information relative to personnel in and related to the markets and industries in which GABLETEK operates, all of which are considered by GABLETEK to be valuable, secret, confidential and proprietary.

*See* Exhibits G, H and I, at ¶ 3.   And they agreed they would be exposed to Confidential Information, and agreed to protect, and not to use or disclose, Confidential Information, and to return all upon separation from employment.   *See* Exhibits G, H and I, at ¶¶ 14–17, 19.

61.   King, Nichols and Roman also agreed to the following non-competition provisions:

**NON-COMPETITION**

7.   During the term of my employment with GABLETEK and for a period of two (2) years after the termination thereof (whether voluntary or involuntary), I will not directly or indirectly, as an individual proprietor, partner, stockholder, officer, employee, director, joint venturer, investor, lender, agent, consultant or any other capacity whatsoever (other than as the holder of not more than three (3%) percent of the total outstanding stock of a publicly held company) or by means of any corporate or other device, perform the same or similar duties and capacities of my employment for which I am/was employed by GABLETEK to any individual or entity that is/was a Customer.

8.   During the term of my employment with GABLETEK and for a period of two (2) years after the termination thereof (whether voluntary or involuntary), I will not directly or indirectly, as an individual proprietor, partner, stockholder, officer, employee, director, joint venturer, investor, lender, agent, consultant or any other capacity whatsoever (other than as the holder of not more than three (3%) percent of the total outstanding stock of a publicly held company) or by means of any corporate or other device, perform the same or similar duties and capacities of my employment for which I am/was employed by GABLETEK to any individual or entity that is engaged in the Restricted Business anywhere within Michigan or Ontario, or within a 25-mile radius of any Customer site to which I was assigned during my employment with GABLETEK.

*See* Exhibits G, H and I, at ¶¶ 7–8.

62.   King, Nichols and Roman further agreed to the following non-solicitation provisions:

**NON-SOLICITATION**

10. During the term of my employment with GABLETEK and for a period of two (2) years after the termination thereof (whether voluntary or involuntary), I will not directly or indirectly, as an individual proprietor, partner, stockholder, officer, employee, director, joint venturer, investor, lender, agent, consultant or any other capacity whatsoever (other than as the holder of not more than three (3%) percent of the total outstanding stock of a publicly held company) or by means of any corporate or other device, contact any Customer or competitor of GABLETEK for the purposes of diverting, taking away, offering, selling or soliciting the Restricted Business.

11. During the term of my employment with GABLETEK and for a period of two (2) years after the termination thereof (whether voluntary or involuntary), I will not directly or indirectly, as an individual proprietor, partner, stockholder, officer, employee, director, joint venturer, investor, lender, agent, consultant or any other capacity whatsoever (other than as the holder of not more than three (3%) percent of the total outstanding stock of a publicly held company) or by means of any corporate or other device, entice away, employ, solicit or recruit for employment any current employee or sales agent of GABLETEK, or engage in any Restricted Business with any current or former employee or sales agent of GABLETEK.

12. I further agree that during the term of my employment with GABLETEK and for a period of two (2) years after the termination thereof (whether voluntary or involuntary), if any Customer, competitor or current employee or sales agent of GABLETEK directly or indirectly contacts me for the purposes of diverting, taking away, offering, selling or soliciting the Restricted Business, I will advise them that I am prohibited from further contact as set forth in this Agreement.

*See* Exhibits G, H and I, at ¶¶ 10–12.

63.     King, Nichols and Roman further agreed the running of the restricted periods (two years) would be tolled and/or extended, as noted in the agreements.  *See* Exhibits G, H and I, at ¶ 13.

64.     In the event of their taking and retention of Confidential Information or other breaches of the agreements, King, Nichols and Roman agreed to immediate injunctive relief, without bond or advance notice to them:

25. I agree that any breach or threatened breach of this Agreement by me could cause significant and continuing injury to GABLETEK, the monetary value of which would be impossible to establish. In the event of my breach or threatened breach of any term of this Agreement, GABLETEK will have, in addition to all remedies of law, the right to equitable relief without the necessity of posting bond or other security or proving actual losses. To the extent permissible under applicable law, a temporary restraining order will be granted immediately on commencement of any such suit. I waive any right to notice of any application for such an order.

*See* Exhibits G, H and I, at ¶ 25.

65.    King, Nichols and Roman also agreed to pay for GABLETEK's attorney fees, expenses and costs and other relief:

> 26. In the event GABLETEK brings suit to enforce any provision of this Agreement, I agree to pay all actual attorney fees, costs and expenses incurred by GABLETEK in collecting amounts due under this Agreement or in obtaining any equitable remedies under this Agreement, as well as liquidated damages in the amount of $10,000 for each breach of this Agreement.

*See* Exhibits G, H and I, at ¶ 26.

66.    Elkins, King, Nichols and Roman also all were covered by the GABLETEK Employee Handbook, which contained prohibitions on, among other things, "theft, unauthorized removal or the improper use of GABLETEK's . . . confidential data" and prohibitions on improper access.  *See* Exhibit J, at pp. 28, 45 ("Even employees with authorized access to GABLETEK's electronic devices and databases are prohibited from accessing any confidential or other customer business information stored on GABLETEK electronic devices for any improper use, including for personal gain.").

67.    Elkins, Staff Heads, King, Nichols and Roman all know that both GABLETEK and Staff Heads and the other Defendants are engaged in the Restricted Business in Michigan.

68.    Elkins, Staff Heads, King, Nichols and Roman all know that Staff Heads and the individual Defendants are working within a 25-miles radius of one or more customer sites to which the individual Defendants were assigned while with

GABLETEK.

***With Elkins Having Accomplished Her Data Heist And Having Set Up Staff Heads, She Resigned Without Notice, And Led Her New Workforce To Follow Her.***

69.    By the time Elkins resigned via email February 10, 2023 without advance notice, she had a plan as to who would join her.

70.    The next day (on a Saturday), King resigned via email.  Two days later (February 13) Nichols resigned via email, and Roman, 15 days later (February 28, 2023).

71.    King became Senior Robotics Engineer at Staff Heads.

72.    Upon information and belief, Nichols and Roman are also senior robotics engineers or robotics engineers or equivalent, at Staff Heads.

73.    King, Nichols and Roman are, upon information and belief, working at some of the same customers, and offering or providing essentially the same services they did while with GABLETEK, only doing so under Elkins and/or Staff Heads.

74.    This is all occurring while Elkins still has the untold number of files and other documents containing confidential information and trade secrets belonging to GABLETEK still in her possession, custody and/or control.

75.    Upon information and belief, Elkins and other Defendants, while still employed with GABLETEK, took and/or lined up for themselves customer and other business opportunities that had been presented to GABLETEK and about which they

learned through their work with GABLETEK.

76.    More recent resignations from GABLETEK have been occurring and are expected to occur due to Elkins's and the other Defendants' conduct, unless enjoined.

77.    Elkins, upon information and belief, interfaced with one or more information technology vendors to try to cover up her deceitful behavior.

78.    The initial forensic analysis obtained by GABLETEK of Elkins's laptop revealed the data exfiltration done at the hands of Elkins was extensive in both breadth and depth, and shocking in its brashness.

79.    Upon information and belief, Elkins and Staff Heads have been using and are continuing to use and disclose trade secrets, confidential and proprietary information, including, but not limited to, the documents, files and information taken from GABLETEK and otherwise held by one or more Defendants, and also including, but not limited to, Defendants' insider and specific knowledge of customer contacts, customer needs, histories, and pricing and cost information, and employee information, in an attempt by Defendants to solicit customers, prospects, employees and lines of work away from GABLETEK.[6]

---

[6] And in another act of deception and an attempt to obscure her footprint and discovery of her company name, Elkins still holds out to the world improperly via LinkedIn that she is still "Operations Manager - Gable Services, LLC." *See* Exhibit A (LinkedIn profile).

80.     Upon information and belief, Defendants are setting their sights not on merely the general population of customers in the marketplace, but specifically on all GABLETEK customers and prospects with whom Elkins, King, Nichols and Roman worked (at a minimum) and/or whom GABLETEK was recently targeting, using confidential and trade secret information belonging to GABLETEK, in total violation of Elkins's, King's, Nichols's and Roman's obligations to GABLETEK and in total violation of Defendants' obligations and prohibitions under applicable law.

81.     Unless Defendants are immediately and fully restrained and ordered to return all GABLETEK data and documents in all forms, including all iterations of same, and barred from further use or disclosure, GABLETEK faces an imminent, irreparable and extensive threat to its business.

### Causes of Action

### COUNT I –
### VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016,
### 18 U.S.C. §§ 1836, *et seq*.
### (All Defendants)

82.     GABLETEK realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

83.     GABLETEK owns and possesses certain confidential, proprietary and trade secret information, as alleged above.  This confidential, proprietary, and trade secret information relates to products and services that are used, shipped, sold and/or

23

ordered in, or that are intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce, including in the auto industry.  GABLETEK's services, products, customers, vendors and affiliated entities combined cover customers, products and services in numerous additional states beyond GABLETEK's locations, and internationally.

84.    GABLETEK derives independent economic value from the fact that its confidential, proprietary, and trade secret information is not generally known to the public and not readily ascertainable through proper means.  GABLETEK has taken, and continues to take, reasonable measures to keep that information secret and confidential.

85.    Without GABLETEK's consent, Elkins and Staff Heads, and upon information and belief, all Defendants, misappropriated the confidential, proprietary, and trade secret information in an improper and unlawful manner as alleged herein, and thereby committed one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*.

86.    The improper means used by Defendants to acquire and disclose GABLETEK's trade secrets include, among other things:

        a.    Breaching and inducing breaches of specific provisions of GABLETEK's agreements with King, Nichols and Roman;

b.  Elkins using her company laptop as a source to exfiltrate hundreds of documents to her own personal drives and systems;

c.  Elkins working with others, including vendors, to cover her tracks;

d.  The individual Defendants all resigning without notice and giving opaque or false reasons for resignations, to deflect attention or avoid scrutiny;

e.  Elkins setting up Staff Heads and serving as its CEO and, upon information and belief beginning to compete, even while still employed with GABLETEK and collecting her full paycheck; and

f.  transferring entire folders of critical and extensive customer and employee information, needs, sales histories and targets.

87.    As a direct result of Defendants' conduct, GABLETEK has suffered, and if the conduct is not enjoined, will continue to suffer, harm.

88.    Defendants' conduct entitles GABLETEK to an injunction based on actual and threatened misappropriation as set forth in 18 U.S.C. § 1836(b)(3)(A)(i).

89.    GABLETEK requests that the Court take affirmative action to protect its trade secrets, as set forth in 18 U.S.C. § 1836(b)(3)(A)(ii), including by ordering the inspection of Defendants' computers, mobile devices, personal USB and electronic storage devices, email accounts, "cloud"-based storage accounts, and

mobile device call and message history, to determine the extent to which GABLETEK's trade secrets were wrongfully taken and/or disseminated to others.

90.   Defendants' misappropriation and disclosure of GABLETEK's trade secrets entitles GABLETEK to monetary damages, fees, expenses and costs, as provided in 18 U.S.C. § 1836(b)(3)(B).  GABLETEK is also entitled to recover for Defendants' unjust enrichment.

91.   Defendants' misappropriation of GABLETEK's trade secrets was willful and malicious and was undertaken for the purpose of harming GABLETEK. GABLETEK therefore seeks exemplary and punitive damages as set forth in 18 U.S.C. § 1836(b)(C).

**COUNT II –**
**VIOLATION OF THE MICHIGAN**
**UNIFORM TRADE SECRETS ACT,**
**MICH. COMP. LAWS ANN. §§ 445.1901, *et seq.***
**(All Defendants)**

92.   GABLETEK realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

93.   Upon information and belief, Defendants disclosed or used GABLETEK's confidential, proprietary, and trade secret information without the express or implied consent of GABLETEK, and they knowingly used improper means to acquire that confidential, proprietary, and trade secret information.

94.   Such confidential, proprietary, and trade secret information derive

independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from their disclosure or use.  As such, GABLETEK takes reasonable efforts to guard against such disclosures and to maintain the secrecy of its confidential, proprietary, and trade secret information.

95.    The continued misuse and possession of GABLETEK's property by Defendants was and is unauthorized and unlawful.

96.    Defendants' possession and misuse of GABLETEK's property has resulted in an inequity.

97.    This conduct constitutes both the actual and threatened use and/or disclosure of trade secrets belonging to GABLETEK.

98.    GABLETEK has no adequate remedy at law for Defendants' actions because the damages GABLETEK has suffered and will continue to suffer in connection with the disclosure and use of its confidential information and trade secrets described herein and the use and disclosure of its property threaten damage to GABLETEK's goodwill, customer base, and business reputation, which damages are incapable of exact proof.

99.    Defendants will, unless restrained preliminarily and permanently, continue to use and disclose GABLETEK's confidential, proprietary, and trade secret information.

100.   Accordingly, a preliminary and permanent injunction, restraining and enjoining Defendants and those acting in concert with them or on their behalf from continuing this unlawful conduct and enjoining them from engaging in further actual or threatened acts of misappropriation is required to provide GABLETEK meaningful relief.

101.   Due to Defendants' use and disclosure of GABLETEK's trade secrets, GABLETEK has sustained damage and further seeks an award of its reasonable and necessary attorneys' fees, expenses and costs.

**COUNT III –**
**BREACH OF DUTY OF LOYALTY**
**(Elkins Only)**

102.   Plaintiff restates the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

103.   As a high-level manager of GABLETEK and its Office Administrator and/or Operations Manager and member of GABLETEK's executive team, Elkins was entrusted with key, competitive information and owed a duty of loyalty to GABLETEK to use the strategic and/or competitive information, data, documents, and customer detail for the benefit of GABLETEK while employed.

104.   Elkins also owed GABLETEK a duty not to compete – directly or indirectly, and whether herself or in connection with a company or via others – against GABLETEK while still employed by GABLETEK.

105. By virtue of her conduct described above and other conduct while employed with GABLETEK, Elkins materially breached her duties to GABLETEK.

106. As a direct and proximate result of Defendant's conduct, GABLETEK has sustained damages in an amount to be determined by a trier of fact and including, but not limited to, amounts paid to Elkins (compensation) as well as the value of employee benefits provided, lost recoupment of funds, recruiting costs, opportunity costs, interest, internal labor costs, and attorney fees, costs and expenses.

**COUNT IV –**
**BREACH OF CONTRACT**
**(Non-Competition, Non-Solicitation, Confidentiality and**
**Work Product Agreement)**
**(King, Nichols and Roman Only)**

107. GABLETEK realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

108. Pursuant to the Non-Competition, Non-Solicitation, Confidentiality and Work Product Agreements, King, Nichols and Roman agreed not to take, retain, use or disclose customer and other documents, information or data of GABLETEK, as stated therein.

109. Pursuant to the Non-Competition, Non-Solicitation, Confidentiality and Work Product Agreements, King, Nichols and Roman agreed not to compete against GABLETEK for two years, as stated therein.

110. Pursuant to the Non-Competition, Non-Solicitation, Confidentiality

and Work Product Agreements, King, Nichols and Roman agreed not to solicit customers or employees of GABLETEK for two years, as stated therein.

111. By virtue of their conduct described above and other conduct, King, Nichols and Roman have each, upon information and belief, materially breached the terms of their Non-Competition, Non-Solicitation, Confidentiality and Work Product Agreements.

112. As a direct and proximate result of the conduct of King, Nichols and Roman, GABLETEK has sustained monetary damages in an amount to be determined by a trier of fact and including, but not limited to, lost business, fees and expenses to pursue Defendants, as well as an irreparable and imminent further loss of goodwill, client relationships, strategic advantage, and potential future business.

## COUNT V –
## TORTIOUS INTERFERENCE WITH CONTRACT
## OR CONTRACTUAL RELATIONS
### (Elkins and Staff Heads Only)

113. GABLETEK realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

114. GABLETEK's Agreements with King, Nichols and Roman are valid contracts.

115. These contracts have been breached by King, Nichols and Roman.

116. Upon information and belief, Elkins and Staff Heads unjustifiably instigated the breach(es) by encouraging and/or assisting King, Nichols and Roman

or otherwise.

117.   As a result of Elkins's and Staff Heads's unjustifiable instigations of the breaches and related conduct, GABLETEK has suffered and will continue to suffer damages.

## COUNT VI –
## TORTIOUS INTERFERENCE WITH BUSINESS
## RELATIONSHIPS OR EXPECTANCIES
### (All Defendants)

118.   GABLETEK realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

119.   GABLETEK enjoyed business relationships and/or expectancies of business relationships with certain customers, prospects and employees, including customers, prospects and employees with whom Defendants are now doing business and/or soliciting to do business.

120.   Defendants knew and were aware of these business relationships and/or expectancies.

121.   The business relationships and expectancies describe above had an actual economic benefit and/or likelihood of economic benefit to GABLETEK.

122.   Defendants knowingly and intentionally used the trade secrets and confidential information and breaches of their agreements and/or other legal duties to induce GABLETEK's customers, prospects and employees to do business with Defendants instead of GABLETEK when GABLETEK validly expected those

customers, prospects and employees to do (and/or continue to do) business with GABLETEK.

123.   The aforesaid acts were inherently wrongful and could not be justified under any circumstances.

124.   Defendants' actions have resulted in damages to GABLETEK in the form of disruption of the business relationships, and expectancies, between GABLETEK and its customers, prospects and employees.

## COUNT VII –
## CONVERSION
## (STATUTORY – MICH. COMP LAWS ANN § 600.2919(A) –
## AND COMMON LAW CONVERSION)
## (All Defendants)

125.   GABLETEK realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

126.   Upon information and belief, Defendants wrongfully asserted control over and obtained GABLETEK's files, documents and the information and data contained therein.

127.   Such conduct was willful and knowing.

128.   Upon information and belief, such conduct was done for Defendants' own use and possibly for the use of their affiliates and/or others.

129.   GABLETEK has been damaged by this conduct, and is entitled to an award of actual damages and treble damages, plus its attorney fees and costs.

130.   Preliminary and permanent injunctive relief is required for the return of all files, information, data and property converted by Defendants, and to prevent further misuse or disclosure of the data and property, and no adequate remedy exists at law for complete relief absent such injunctive relief.

**COUNT VIII**
**UNJUST ENRICHMENT**

131.   GABLETEK realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

132.   Elkins, King, Nichols and Roman accepted the benefits conferred on them by their employment with GABLETEK and/or the agreements with GABLETEK each signed.

133.   Instead of abiding by the duties and obligations placed upon them by the terms of their employment and/or these agreements, Defendants have ignored those duties and obligations, and have instead intentionally and willfully violated the terms of the above-referenced legal duties and/or agreements by soliciting GABLETEK customers and prospects to move their business from GABLETEK to Staff Heads or otherwise to do business with Defendants.

134.   Further, again in derogation of their duties and obligations, Defendants have solicited GABLETEK's employees to resign their employment with GABLETEK and to join Staff Heads or otherwise to do business with Defendants.

135.   Defendants have taken the benefits of the above-referenced

employment and/or agreements with GABLETEK, but they have failed and/or refused to abide by the duties and obligations promised by them in exchange for those benefits.

136.   As a result of Defendants' wrongful retention of the benefits they received in exchange for the duties and obligations which they have failed and/or refused to perform, Defendants have been unjustly enriched.

137.   It is unjust and inequitable for Defendants to retain any benefits they received from GABLETEK under their employment and/or agreements with GABLETEK, in light of Defendants' failure and/or refusal to comply with the duties and obligations owed by them to GABLETEK.

138.   As a result of their wrongful actions, Defendants have been unjustly enriched by their derogation of and refusal to comply with the duties and obligations owed by them to GABLETEK.

139.   GABLETEK requests that all monies paid by it to Defendants in exchange for their employment (from at least the time of breach of legal duty) and/or their now-breached agreements be returned and refunded, along with all applicable interest on those monies.

**COUNT IX –**
**AIDING AND ABETTING**
**(All Defendants)**

140.   GABLETEK realleges and incorporates by reference all preceding

paragraphs as if fully set forth herein.

141.   Defendants' actions independently establish the wrongs complained of herein.

142.   Upon information and belief, each Defendant knew of the wrongs committed by the other Defendant.

143.   Upon information and belief, each Defendant provided substantial assistance to the other Defendant to effect the wrongs committed by each of the Defendants.

144.   Upon information and belief, Defendants acted together, in concert, or at the direction of each other, to wrong GABLETEK.

145.   Upon information and belief, Defendants knowingly aided and abetted one another in the misconduct and unlawful conduct outlined above.

146.   As such, Defendants are jointly and severally responsible for each and every wrong committed.

147.   GABLETEK has been damaged by this conduct, and is entitled to an award of actual damages and treble damages, plus its attorney fees and costs.

## COUNT X –
## CIVIL CONSPIRACY
### (All Defendants)

148.   GABLETEK realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

149.   Upon information and belief, Defendants have been, and are, engaged in a concerted action to divert, use and disclose GABLETEK's confidential, proprietary and trade secret information, and to violate King's, Nichols's and Roman's contract and other duties owed to GABLETEK and intentionally and wrongfully continuing to exercise control over GABLETEK property and customers and seeking improperly to cover their tracks, and are causing damage to GABLETEK.

150.   GABLETEK has no adequate remedy at law for Defendants' conspiracy because the damages GABLETEK has suffered and will continue to suffer in connection with the above loss of clients and misuse and wrongful disclosure of GABLETEK's confidential, proprietary and trade secret information are incapable of exact proof.

151.   Defendants, unless restrained, will continue to conspire to damage GABLETEK through the use and disclosure of GABLETEK's confidential, proprietary and trade secret information and other misconduct.

152.   Accordingly, a preliminary and permanent injunction, restraining and enjoining Defendants from continuing to conspire, is needed to provide GABLETEK meaningful relief.

153.   Due to the misuse of confidential, proprietary and trade secret information, breaches of contractual and other duties owed and other unlawful

conduct Defendants have conspired to commit, GABLETEK has suffered and continues to suffer damages.

## **RELIEF REQUESTED**

WHEREFORE, GABLETEK respectfully requests the following relief:

a)      A temporary restraining order and preliminary injunction providing the securing and return of all tangible materials, whether electronic or hard copy, that were obtained from and/or belong to GABLETEK (and/or its affiliates) that have been or remain in Defendants' possession, custody or control, including, but not limited to, GABLETEK's confidential, proprietary and trade secret information;

b)      A temporary restraining order and preliminary injunction preventing the individual Defendants from violating their various confidentiality obligations;

c)      Expedited discovery to provide GABLETEK with immediate information on the more precise nature, extent and breadth of the breaches and other unlawful conduct committed by Defendants and anyone else acting in concert with them or on their behalf;

d)      A full analysis of the files and clients taken by Defendants, and the remediation, purging and/or return of files; and Court-enforced assurances regarding same;

e)      An order mandating specific performance of the individual Defendants' restrictive covenants;

f)      Enter a judgment against Defendants for actual, treble, exemplary, and punitive damages in an amount to be determined at the time of trial, in excess of $75,000.00;

g)      Interest and costs;

h)      Along with final disposition of this matter, a permanent injunction against Defendants to the same or greater effect as the temporary restraining order(s) and/or preliminary injunction(s) sought herein;

i)      An award of GABLETEK's attorneys' fees and expenses; and

j)      Other relief the Court and/or trier of fact deems just and proper.

## **JURY DEMAND**

Plaintiff GABLETEK hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

CLARK HILL PLC

s/ Paul A. Wilhelm
Paul A. Wilhelm (P69163)
CLARK HILL PLC
500 Woodward Avenue, Ste. 3500
Detroit, MI  48226
(313) 309-4269/ (313) 965-8300
pwilhelm@clarkhill.com

*Attorneys for Plaintiff*

Date:  June 20, 2023

# **VERIFICATION**

I, John Nitecki, pursuant to 28 U.S. C. § 1746, declare as follows:

I, John Nitecki, Vice President of Operations of Plaintiff Gable Services, LLC, state that I have read and made this Verified Complaint and attest that those facts stated of my own knowledge are true to the best of my knowledge, information and belief and those matters stated of which I have been informed I believe to be true after reasonable inquiry, to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June ⎯19⎯, 2023 in ⎯⎯Troy⎯⎯⎯⎯⎯⎯⎯, Michigan.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
John Nitecki

271727157.v3